## FEDERAL PUBLIC DEFENDER
## DISTRICT OF NEW JERSEY

**RICHARD COUGHLIN**
FEDERAL PUBLIC DEFENDER

1002 Broad Street
Newark, New Jersey 07102

**CHESTER M. KELLER**
FIRST ASSISTANT

(973) 645-6347  Telephone
(973) 645-3101  Facsimile

July 7, 2020

Honorable Stanley R. Chesler
Senior United States District Judge
U.S. Courthouse
50 Walnut Street
Newark, N.J.  07102

Re: U.S. v. Omar Doolittle
Dist Ct. No. 19-501
USM # 72219-050

Dear Judge Chesler:

Please accept this letter in lieu of a more formal motion, as Mr. Doolittle's application for Compassionate Release.   Also, attached hereto are the following; Exhibit A is the marriage certificate of Omar Doolittle and Zina Daniels.  Exhibit B are medical records reflecting Ms. Daniel's treatment for a heart attack in 2016.  Exhibit C is letter from Zina Daniels.  Exhibit D are medical records for Zina Daniels from 2020. Exhibit E is letter from Dr. Ricardo Castillo.  Exhibit F is the affidavit of Dr. B Williams. Based on the nature of these exhibits they are not filed via ECF, but are rather filed under seal and in support of the instant application.

For decades, the Bureau of Prisons (hereinafter referred to as "BOP") had both unlimited and unreviewable discretion to block the sentencing judge from considering a motion to reduce an inmates sentence, even where "extraordinary and compelling reasons" warranted such a reduction.  18 USC § 3582(c)(1)(A)(1) Until the First Step Act, if the BOP denied a request for compassionate release, an inmate had no ability to ask the court for any relief notwithstanding the circumstances.  In 2018, however, Congress changed the "compassionate release law" and allowed inmates, and not just the BOP, to petition the Court for release when circumstances warranted a reduction.

Accordingly, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Omar Doolittle respectfully requests that this Court modify his sentence to time served or allow him to serve the remainder of his sentence under home confinement pursuant to 18 U.S.C. § 3624(c)(2). Upon release, Mr. Doolittle would still be subject to the term of supervised release that was initially imposed at sentencing.

## JURISDICTION

As revised, 18 U.S. C. § 3582(c)(1)(A)(i) provides the sentencing judge with jurisdiction to consider a defendants motion for reduction of sentence based on extraordinary and compelling reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after " the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier" See First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 ( Dec 21, 2018). On or about April 30, 2020, Mr. Doolittle submitted a request for Compassionate Release or Reduction in Sentence to the Warden of Devens FMC. No action has been taken by the BOP in regard to this request and more than thirty days has elapsed. Therefore, based on these circumstances, this matter is now ripe for the Court to consider Mr. Doolittle's application for Compassionate Release. Jurisdiction is properly conferred upon this Court.

## PROCEDURAL HISTORY

Mr. Doolittle was arrested on January 30, 2019 for fraud related offenses. He pled guilty to charges of Conspiracy to Commit Bank Fraud and Aggravated Identity theft on July 17, 2019. Mr. Doolittle was sentenced by this Court on November 14, 2019 to an aggregate term of 48 months' custody with three years of supervised release to follow. Mr. Doolittle was permitted to voluntarily surrender and he duly reported to FMC Devens on January 15, 2020. His current projected release date, as calculated by the BOP, is June 11, 2023; he is projected to be eligible for release to home detention on January 17, 2023.

## AUTHORITY UNDER 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13

18 U.S.C. §3582(c)(1)(A)(i) states in relevant part that the Court:

> May reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that... extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Pursuant to that authority, the Sentencing Commission defined extraordinary and compelling reasons in U.S.S.G. §1B1.13. As relevant here, extraordinary and compelling reasons exist when the defendant's spouse is incapacitated and the defendant would be the only available caregiver for the spouse. See U.S.S.G. § 1B1.13, comment n. 1(C)(ii). However, the factors in U.S.S.G. § 1B1.13 are only viewed as guidance and do not have the effect of binding law. See, *Woodard v. United States__F Supp 3d__2020 WL 3528413* (ED Virg. filed 6-26-20) ("In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G.§ 1B1.13 in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Lisi*, 2020 WL 881994 at 3. (SD NY 2-24-

2

20); *United States v. Fox*, 2019 WL 3046086 at 3 (D. Me 7-11-19)

Indeed, it is incumbent on our courts to resolve these matters because the Bureau of Prisons has proven to be ill equipped to manage the federal prison system and has badly handled the directive of Attorney General Barr made early in the pandemic. https://www.nytimes.com/2020/06/25/opinion/coronavirus-prisons-compassionate-release.html?smid=fb-nytopinion&smtyp=cur ( "the Bureaus response has been dysfunctional to the point of cruelty") Astonishingly, the BOP has advised many inmates that they had been approved for release due to the pandemic, only to be told later that a mistake had been made and that they would not be released. *Id; Woodard v. United States*, Id. ("(t)he Court is aware of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the Covid-19 Pandemic.")

## MR. DOOLITTLE'S SPOUSE'S MEDICAL AND PHYSICAL CIRCUMSTANCES AND LACK OF OTHER CAREGIVERS WARRANT GRANTING THIS RELEIF.

Mr. Doolittle married Zina Daniel in December of 2020. (See ex A) In December of 2016, Ms. Daniels suffered a major heart attack (See Ex. B) As a consequence thereof, in October of 2017 Ms. Daniels had an AICD implanted. An AICD (Automatic Implantable Cardioverter Defibrillator) is a device that monitors a person heart rate. It is implanted into a heart failure patient and gives them a shock if they have life threatening heart arrhythmia or an abnormally high heart rate. As can be seen from the attached documentation, Ms. Daniel's heart condition is very serious and requires constant monitoring. Due to her condition Ms. Daniels requires the assistance of others for many daily tasks. Since her heart attack her primary caregiver has been Omar Doolittle. More recently, however, Mr. Doolittle was Ms. Daniels only caregiver.

When Ms. Daniels was originally released from the hospital in late 2016, she and Mr. Doolittle moved in with Ms. Daniels daughter in New York. Ms. Daniels also was provided assistance by her sister, Carnelia Alston. However, Ms. Alston moved to South Carolina shortly thereafter and is presently unable to assist Ms. Daniels. Living with her daughter and her daughter's family proved to be untenable, and in August of 2018 Ms. Daniels and Mr. Doolittle were forced to leave the daughters residence. Because of their financial condition, Mr. Doolittle and Ms. Daniels resided in a shelter in Queens, New York. After six months the couple was able to secure section 8 housing and moved into a one-bedroom apartment in Far Rockaway, Queens. Mr. Daniels continues to reside at this apartment. Of course, in January of this year, Mr. Doolittle surrendered to FMC Devens to serve the 48-month custodial term imposed by this Court.

Since Mr. Daniels started to serve his sentence in January of 202, Ms. Daniels has had an extremely difficult existence. ( See Ex. C & D) She is prescribed a number of medications due to her medical situation and is forced to procure these prescriptions on her own and monitor her daily usage. Her ability to perform even the most basic daily functions is extremely limited by her bad heart; consequently, her mental health has deteriorated. ( See Ex. C ) She has no other family members to assist her. (See Ex C) She is desperate to have

Mr. Doolittle return to their home. ( See Ex C & E) Although Mr. Doolittle has only served a short portion of his sentence, it is submitted that the present circumstances, especially when combined with the pandemic, make it reasonable for Mr. Doolittle to be released to home confinement in order to provide adequate care for his wife.

Mr. Doolittle's family circumstances and his wife's desperate need for a caregiver present extraordinary and compelling reasons to release Mr. Doolittle to home confinement. Covid-19 is an unprecedented national emergency that, for many months now, has proven very difficult to control. Well over 100,000 Americans have been killed by the virus and many more taken seriously ill. Covid-19 is of particularly serious risk to vulnerable individuals such as Ms. Daniels. Individuals with preexisting heart conditions like Ms. Daniels are at greater risk for contracting COvid-19. Additionally, susceptible individuals such as Ms. Daniels are more likely to realize a "bad" result if they contract Covid-19. Her lack of a caregiver leaves her more exposed to contracting Covid-19 as she is left to "fend for herself" in terms of acquiring her prescription medication and performing other basic daily tasks.

The number of courts agreeing that the Covid-19 pandemic created an extraordinary and compelling reason for compassionate release is growing daily. See, e.g. *United States v. McCalla*, 2020 WL 3604120 (D. N.J. 7-2-20)*United States v. Williams*, No. 06-CR-0143 (WMN/FLN), 2020 WL 3097615 (D. Minn. 6-11-20); *United States v. Nazzal*, No 10-20392, 2020 WL 3077948 (ED Mich. 6-11-20) United *States v. Hill*, No. 3:19-38(JAM) 2020 WL 2542725 (D. Conn, 5-19-20); *United States v. Clark*, No 4:08-cr-96 (SD Iowa 6-17-20) (2020 U.S. Dist. Lexis 105896) (collecting cases at pp. 12-13)

Indeed, in *United States v. Bucci*, 409 F Supp 3d 1, 2 (D. Mass 2019) the court found that the defendant's role as the only available caregiver for his ill mother constituted a compelling and extraordinary reason to grant compassionate release. Here Mr. Doolittle is the only available caregiver for his wife. Unfortunately, all other family members are not available to provide assistance to Ms. Daniels.

It is submitted that Mr. Doolittle is not a danger to the community. While Mr. Doolittle does have a criminal history, much of it is aged and Mr. Doolittle is now 38 years old. Mr. Doolittle has readily accepted responsibility for his present, "non-violent" property offense. He understands the seriousness of his conduct. He greatly regrets succumbing to the temptation of acceding to the request of another person to put himself in harms way by making purchases with stolen identification devices from home improvement stores. It is important to note that Mr. Doolittle was released on bail for a significant duration of time in this case. He was fully compliant with all conditions of release; he was a valued employee as a cleaner with Commercial Building Services in New York for an extended period of time. He provided care on a daily basis for his wife. Moreover, the Court trusted Mr. Doolittle, given his performance under Pretrial Services supervision, to allow him to voluntarily surrender himself after imposition of sentence to the institution designated by the Bureau of Prisons. Mr. Doolittle dutifully complied with the Court's order by traveling to Massachusetts in January of this year to surrender himself. In short, Mr. Doolittle has shown himself to be an individual amenable to supervision and capable of staying crime

4

free.

Mr. Doolittle has been assigned a low security classification by the BOP. There is no reported history of disciplinary issues. Although he has indicted a strong desire to work and participate in programs offered by the BOP, due to the pandemic, he has been unable to participate in such activities.

Consideration of the § 3553 factors favor release. In terms of punishment, Mr. Doolittle has only served approximately 7 months of his 48 month custodial sentence. It is submitted, however, that notwithstanding the short duration of the sentence served, an appropriate measure of punishment has been provided to Mr. Doolittle. While he has adjusted to the prison setting at Devens, Mr. Doolittle has had to live with the daily anxiety of being uncertain of the well-being of his wife. By virtue of his position of her caregiver, Mr. Doolittle has been well aware of the fragile health status of his wife. Also, the pandemic changes the punishment analysis. When the Court sentenced Mr. Doolittle it "did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic." *United States v. Zukerman*, __F. Supp. 3d __ 2020 WL 1659880 (SD NY 4-3-20); *U. S. v. Rodriguez*, F Supp. 3d  2020 WL 1627331 at 12 (ED PA  4-1-20) (finding that the pandemic changes § 3553 punishment analysis). In terms of deterrence, it is plain that increasing the severity of a sentence does little to deter crime. Mr. Doolittle has served six months of his sentence. Making him complete the custodial aspect of his sentence adds nothing in terms of deterrent value. See *Five Things about Deterrence*, Department of Justice, May 2016, https;//nij.ojp.gov/library/publications/five-things-about-deterrence. Also, releasing Mr. Doolittle protects the public. It is clear that prisons and jails are high risk environments for Covid-19's spread. Jail and prisons are petri dishes for Covid-19. As such, health experts recommend releasing non-violent offenders as "decreasing risk in prisons and jails decreases risk to our communities... correctional health is public health") See Ex. F- Affidavit  of Dr. Brie Williams, professor of Medicine at UCSF- at par. 20) Finally, consideration of rehabilitation factors weighs in favor of granting this motion. Due to the pandemic, and the nature of how jails operate (impossible to social distance) inmates are essentially being warehoused in their cells with no opportunity for engaging in any rehabilitative programs. In this regard, Mr. Doolittle had sought to engage in programs and employment opportunities offered by the BOP. Unfortunately, due to the pandemic, these type of rehabilitative programs are not available. This type of existence is directly contrary to rehabilitative goals.

## CONCLUSION

It is submitted that Mr. Doolittle is an appropriate candidate for compassionate release:

1. Mr. Doolittle has complied with the need to exhaust his administrative remedies within the BOP. Mr. Doolittle has filed an administrative request for compassionate release. More than 30 days has elapsed since this request was made; this

5

application is thus ripe.

2. Extraordinary and compelling reasons warrant a reduction. Mr. Doolittle is the sole caregiver for his wife, Zina Daniels. Ms. Daniels suffers from a serious medical issue that has incapacitated her.

3. Notwithstanding the duration of the sentence served by Mr. Doolittle, based on all the circumstances, he is not a community danger.

4. The requested reduction is consistent with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Given Mr. Doolittle's wifes incapacitation due to her heart condition, and Mr. Doolittle's role as her sole caregiver, Mr. Doolittle respectfully asks the Court to reduce his sentence to time served followed by three years of supervised release. If there are any doubts about additional need to protect the community or punish, then the Court may convert a portion of his supervision to home detention.

Thank you for your consideration of this matter

Respectfully,

s/ John H. Yauch
John H. Yauch
Assistant Federal Public Defender

Cc: Andrew Mark Trombley, Esq
    Ryan Lee O'Neill, Esq.

6