NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : : : | Criminal No. 19-501 (SRC) |
| v. | : : |  |
| OMAR DOOLITTLE | : : : | **OPINION & ORDER** |

**CHESLER**, District Judge

      This matter comes before the Court on the motion by Defendant Omar Doolittle ("Defendant" or "Doolittle") for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The United States of America (the "Government") has opposed the motion. The Court has considered the submissions on the docket, as well as those shielded from public access in light of the sensitive medical information they contain. For the following reasons, it will deny the motion.

      On July 17, 2019, Doolittle pleaded guilty to charges of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1)(2). These charges were based on Doolittle's role in a complex fraud scheme involving stolen personally identifying information, hundreds of fraudulent credit card purchases, the creation and use of false identification forms, and the transport and sale of stolen property within New Jersey and across state lines. According to the United States Sentencing Guidelines, the advisory sentence applicable to Defendant ranged from 65 to 75 months'

imprisonment. Neither the Government nor Defendant objected to this calculation. On November 14, 2019, this Court sentenced Defendant to a term of 48 months' imprisonment to be followed by five years of supervised release.

Doolittle voluntarily surrendered and began serving this sentence on January 15, 2020. He is currently housed at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). On or about April 30, 2020, Doolittle submitted a request for compassionate release or reduction in sentence to the Warden of FMC Devens. However, as of the July 8, 2020 filing of the instant motion, Doolittle had received no response from the Bureau of Prisons ("BOP").

Defendant now moves for the Court to modify his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). In the alternative, he requests that the Court order that he may serve the remainder of his sentence under home confinement pursuant to 28 U.S.C. § 3624(c)(2). The motion for compassionate release is made on grounds that Doolittle's spouse, Zina Daniels, is incapacitated and lacks a caregiver so long as he remains incarcerated.[1]

In support of his motion, Doolittle explains that his wife suffered a heart attack in December of 2016 and continues to deal with poor health as a result of her cardiovascular disease. According to Defendant's submission, Ms. Daniels' physical condition renders it very difficult for her to manage day to day without a caregiver, including, for example, having to procure her prescription medications on her own. These hardships, Defendant further maintains,

---

[1] The Court will not consider the portion of Defendant's motion requesting that he be allowed to serve the remainder of his sentence in home confinement under the custody of the BOP pursuant to 18 U.S.C. 3624(c)(2), as amended by Section 12003(b)(2) of the CARES Act. This Court has no jurisdiction to issue any orders predicated upon 18 U.S.C.§ 3624(c)(2) or its amendments under the CARES act. See United States v. Viteri, Crim No. 19-44 (FLW), slip op. at 4 (D.N.J. April 10, 2020); see also United States v. McGimsey, 2019 WL 2396574, at *3 (W.D. Ky. June 6, 2019) (holding same).

have negatively impacted her mental health. Doolittle also asserts that while other family members had previously been available to help care for Ms. Daniels, they are no longer in a position to provide aid. The record shows that Ms. Daniels had once had the assistance of her adult daughter, with whom Doolittle and Ms. Daniels lived, but according to Doolittle's submission, that arrangement became untenable.

The Court recognizes that the family members of incarcerated individuals often struggle to cope without their relative's daily presence and aid, but Defendant's application does not meet the criteria for compassionate release under the law. A district court may modify a sentence of imprisonment only in "limited circumstances." See Dillon v. United States, 560 U.S. 817, 825 (2010). One such circumstance is a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The statute, as amended by the First Step Act of 2018, allows a motion for such relief to be brought by either the Director of the BOP or by the defendant himself after the defendant has exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020). Exhaustion under the statute requires one of the following: (1) the defendant inmate must fully pursue administrative appeal of the BOP's decision not to file a motion on the defendant's behalf or (2) wait until "the lapse of 30 days from the receipt" by the warden of the defendant's facility of the defendant' request that a motion be filed. 18 U.S.C. § 3582(c)(1)(A). The Third Circuit has clearly held that the First Step Act authorizes a court to consider a motion brought directly by the defendant only after the statutory exhaustion requirement is satisfied. Raia, 954 F.3d at 597. Under the statute, a court may reduce the defendant's sentence if the Court finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with

3

any applicable policy statements issued by the Sentencing Commission;" and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate that reducing the defendant's sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

As a threshold matter, the Court notes that Doolittle has met the statutory exhaustion requirement of the First Step Act. Doolittle applied for administrative relief with the warden of FMC Devens, and over 30 days have run from that time without any action or response by the BOP. This motion is, therefore, properly before this Court.

However, on review of the merits of the motion, the Court finds that the relief Defendant seeks is not warranted.

First, Defendant fails to present an extraordinary and compelling reason justifying his early release. He claims his wife's poor health and lack of support pose a hardship, but he has not demonstrated that his wife's situation constitutes an "extraordinary" reason within the meaning of the compassionate release provision. The Court notes that the statute itself does not define the key terms "extraordinary and compelling," apparently providing courts with some flexibility and discretion to consider the unique circumstances of a motion for compassionate release. See, e.g., United States v. Rodriguez, 2020 WL 1627331, at *5-6 (E.D. Pa. Apr. 1. 2020) (analyzing the "flexible catchall provision" set forth in the First Step Act and finding that it provides courts with leeway to consider circumstances outside of the guidelines published by the Sentencing Commission and the BOP). As the Government notes in its brief, the Sentencing Commission has issued a policy statement on the reduction of a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), concerning, among other things, the release of an inmate based on a spouse's incapacitation. While the policy statement, set forth in the Sentencing Guidelines § 1B1.13, was

issued prior to the First Step Act, and is considered by many district courts as not dispositive of a court's independent assessment of compassionate release motion, it remains that courts continue to look to the § 1B1.13 for "helpful guidance." United States v. Lisi, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020); see also Rodriguez, 2020 WL 1627331, at *6 (holding that the policy statement "remains informative" in evaluating a motion under the First Step Act and citing various cases holding the same). In light of the fact that § 1B1.13 addresses circumstances involving family hardship, and is thus particularly germane to the instant motion, the Court has consulted those guidelines in evaluating Doolittle's claim.[2]

The Sentencing Commission's applicable policy statement expressly identifies "Family Circumstances" among the reasons that might warrant relief under § 3582(c)(1)(A). See U.S.S.G. § 1B1.13 cmt. 1(C). In relevant part, the statement notes that "Family Circumstances" may present the requisite extraordinary and compelling reason when "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Id. For further guidance on what constitutes "incapacitation," courts have looked to the BOP guidelines for handling inmate requests for compassionate release based on the incapacitation of a spouse, published as BOP Program Statement § 5050.50. See, e.g., United States v. Collins, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020) (setting forth the text from BOP Program Statement § 5050.50 and applying its standard for determining that a spouse is incapacitated). The United States District Court for the

---

[2] Moreover, this Court must abide by the plain language of the statute, which directs courts to determine whether a modification of the sentence is consistent with the policy statements.

District of Kansas, employing the Program Statement to assist in evaluating a motion for compassionate release, set forth the incapacitation standard as follows:

> The Program Statement defines incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." When evaluating the incapacitation of a spouse, adequate information and documentation should be provided including, but not limited to, a statement and verifiable medical documentation regarding the spouse's incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the spouse, and a statement and documentation regarding the inmate's release plan.

Id. (quoting BOP Program Statement § 5050.50).

Doolittle has presented no medical documentation or other competent evidence demonstrating that his wife is incapacitated. He argues that she has difficulty handling daily tasks on her own and is desperate for him to return home, but there is no indication that she is unable to care for herself or that she is immobile. The record before the Court, in fact, shows that she has been able to attend medical appointments and obtain her prescriptions, without Doolittle's assistance, over these past several months. In contrast, as indicated by the Government, cases in which a compassionate release was found to be justified involve circumstances such as caring for a close relative who is terminally ill or requires round-the-clock care and include other compelling reasons justifying the release. See, e.g., United States v. Walker, 2019 WL 5268752, at *2-3 (N.D. Ohio Oct. 17, 2019) (setting forth the defendant's background as a combat veteran and attendant mental health issues, as well as noting that he had served the majority of his sentence and presented a plan for release); United States v. Bucci, 409 F. Supp. 3d 1, 2-3 (D. Mass. 2019) (observing that the defendant had "demonstrated rehabilitation through his substantial time in prison, including by devoting much of his time to

6

car for terminally ill inmates."). Doolittle's motion fails to demonstrate any such extraordinary circumstance which would justify reducing his sentence, as requested, to time served.

The Court also takes note that Doolittle has raised the general threat of Covid-19, and the heightened risk of a negative outcome when those with pre-existing heart conditions contact the virus. However, Doolittle does not assert, nor do the submitted records indicate, that his wife has been diagnosed with Covid-19.[3] The mere possibility of infection with the Covid-19 virus, does not, without more, constitute an extraordinary circumstance. Cf. Raia, 954 F.3d at 597 (acknowledging the threat of the disease to high-risk inmates in federal custody but expressing the view that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . .."). Moreover, although the Court is mindful that, given her health condition, Ms. Daniels must take additional precautions in facing the current pandemic, the situation presented to the Court is a normal, albeit challenging, consequence of a family member's incarceration. Accord United States v. Carr, 2020 WL 1815910, at *4 (D. Colo. Apr. 10, 2020) (decision on appeal to the Tenth Circuit); United States v. Sam, 2020 WL 3415771, at *3 (E.D. La. June 22, 2020) (denying motion for compassionate release, reasoning that the defendant's elderly mother and grandmother were not incapacitated due solely to their high-risk status in the event they contracted Covid-19).

---

[3] Doolittle's motion likewise makes no mention that he has been diagnosed with the illness.

7

Additionally, given the lack of evidence demonstrating that Defendant's wife is incapacitated, the Court finds that reducing Defendant's sentence based on his wife's poor health and lack of assistance would not be consistent with the published policy of the Sentencing Commission. The Commission has clearly expressed its view on the kind of family circumstances that warrant the relief Doolittle seeks. For the reasons discussed, the motion before the Court neither meets nor approximates those circumstances.

Finally, the Court must consider the applicable factors listed in 18 U.S.C. § 3553(a). It finds that they, too, weigh against granting Doolittle the relief he seeks. The sentence imposed by the Court takes into consideration the seriousness of Doolittle's offense and the need for deterrence. Doolittle's crimes took place over the course of years, caused his victims to sustain hundreds of thousands of dollars in losses, and displayed a callous disregard for family members he recruited to further his fraudulent scheme. Doolittle's criminal history and his record of engaging in further criminal conduct once released from prison underscore the need to deter future criminal conduct. The 48-month sentence, the Court notes, fell well below the guidelines range of 65 to 75 months. Releasing Doolittle at this time, when he has served only seven months of an already lenient sentence, would undermine the principles of imposing a sentence which "promotes respect for the law, provides deterrence, and reflects the seriousness of the offense." United States v. Pawlowski, 2020 WL 3483740, at *2 (3d Cir. June 26, 2020).

For the foregoing reasons, the Court finds no compelling reason to grant Doolittle a compassionate release under the First Step Act.

Accordingly,

**IT IS** on this 21st day of July 2020,

**ORDERED** that Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF 26] is **DENIED WITHOUT PREJUDICE**.

                                                  s/ Stanley R. Chesler
                                                STANLEY R. CHESLER
                                                United States District Judge